**E-FILED on** 1-12-2006

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SUSANNE M. PALMER and SHARON HAMMER,<br><br>        Plaintiffs,<br><br>    v.<br><br>PAUL R. STASSINOS,<br><br>        Defendant. | No. C-04-03026 RMW<br><br>ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION<br><br>**[Re Docket Nos. 110, 117, 119, 120, 131-33]** |
| SUSANNE M. PALMER,<br><br>        Plaintiff,<br><br>    v.<br><br>FAR WEST COLLECTION SERVICES, INC.,<br><br>        Defendant. | No. C-04-03027 RMW<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION<br><br>**[Re Docket Nos. 84, 85, 91, 95, 107-09]** |

Plaintiffs move for class certification in two similar cases, each based primarily on alleged violations of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692o. One case also involves alleged violations of the California Fair Debt Collection Practices Act

ORDER GRANTING IN PART PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION—C-04-03026 RMW, C-04-03027 RMW JAH

("Rosenthal Act"), Cal. Civ. Code § 1788. For the reasons given below, the court grants both motions in part.

## I. BACKGROUND

The plaintiffs, Suzanne Palmer and Sharon Hammer, have both sued at least one debt collector. Palmer is a plaintiff in both of the cases under consideration, one against Paul Stassinos, and the other against Far West Collection Services, Inc. Hammer is a plaintiff only in the suit against Stassinos. In the case against Far West, Palmer's remaining causes of action are for demanding excessive collection fees and interest (in violation of 15 U.S.C. § 1692e(2)(A), e(5), f(1) and California Civil Code § 1788.13) and making false or deceptive statements to collect a debt (in violation of 15 U.S.C. § 1692e, e(5), e(10) and California Civil Code § 1788.13(j)). In the case against Stassinos, the plaintiffs' remaining causes of action are all for alleged violations of the FDCPA: demanding excessive collection fees and interest (in violation of 15 U.S.C. § 1692e(2)(A), f(1)), sending collection letters that falsely purported to be from an attorney (in violation of 15 U.S.C. § 1692e(3)), sending collection letters without required disclosure (in violation of 15 U.S.C. § 1692g), and using a name other than the true business name on a collection letter (in violation of 15 U.S.C. § 1692e(14)).[1]

## II. ANALYSIS

Class certification is a matter within the discretion of the district court, *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), amended by 273 F.3d 1266 (9th Cir. 2001), although the determination must be supported by sufficient factual findings, *Local Joint Executive Bd. Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1161 (9th Cir. 2001), and a proper understanding of the applicable law, *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1237 (9th Cir. 2001).

---

[1] In identical footnotes in their two motions, plaintiffs make passing arguments, unsupported by any law, that a violation of the FDCPA also constitutes a violation of Cal. Bus. & Prof. Code § 17200 *et seq.* The court has previously dismissed plaintiffs' § 17200 causes of action for lack of standing.

ORDER GRANTING IN PART PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION—C-04-03026 RMW, C-04-03027 RMW JAH
2

**A. Whether a class action may be brought under the Rosenthal Act**

As an initial matter, the court must decide whether suits based on the Rosenthal Act may be certified as class actions. It appears that the Rosenthal Act, by its own terms, bars class actions. *See* Cal. Civ. Code § 1788.30(a) ("Any debt collector who violates [the Rosenthal Act] with respect to any debtor shall be liable to that debtor only in an individual action."). Palmer argues, and other courts have found, that the California legislature intended the 1999 amendment to the Rosenthal Act to allow for class actions by incorporating portions of the FDCPA. *See Abels v. JBC Legal Group*, 227 F.R.D. 541, 547-48 (N.D. Cal. 2005) (Ware, J.); *McDonald v. Bonded Collectors, L.L.C.*, ___ F.R.D. ___, 2005 WL 2008202 (S.D. Cal. 2005). This amendment altered California Civil Code § 1788.17 so that it incorporated by reference parts of the FDCPA—specifically, 15 U.S.C. §§ 1692b-1692k—but did not change the language in California Civil Code § 1788.30(a) prohibiting class actions. *See* 2000 Cal. Legis. Serv. Ch. 688 (A.B. 1669).

If the California legislature had wanted to allow plaintiffs to base class actions on the Rosenthal Act, the logical thing to do would have been to amend California Civil Code § 1788.30(a). Plaintiffs argue that while the legislature did intend this, it accomplished it by referring to 15 U.S.C. § 1692k, which allows for class actions. *See* Cal. Civ. Code § 1788.17 ("Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt . . . be subject to the remedies in Section 1692k of, Title 15 of the United States Code"). Studying the legislative history of § 1788.17 reveals that the proponents of the amendment indeed intended to allow class actions based on the Rosenthal Act. The California Senate report on the amendment stated that

> This bill would provide that violators shall be subject to the remedies in Section 1692k of Title 15 of the United States Code, which contains the following remedies for violation: . . . All actual damages and an amount not to exceed the lesser of up to $500,000 or 1 percent of net worth penalty together with costs of suit and attorney's fees to the prevailing plaintiff(s) for class actions.

Cal. B. An., A.B. 969 Sen., 7/07/1999; *see also* Cal. B. An., A.B. 969 Assem., 7/15/1999 (stating the amendment would make violators liable to "a class composed of numerous debtors"). Therefore, the court concludes that class actions are possible for Rosenthal Act violations.

### B. Nature of plaintiffs' remaining claims

Congress explicitly provided private plaintiffs with monetary relief, both actual and statutory, in the FDCPA. *See* 15 U.S.C. § 1692k. No mention is made of injunctive relief for private plaintiffs, and the Third, Seventh, and Eleventh Circuits have found that equitable relief is not available to an individual. *Weiss v. Regal Collections*, 385 F.3d 337, 341 (3d Cir. 2004); *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000); *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir. 1982); *and see Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 399 (E.D.N.Y. 1998). The court is aware that injunctive relief has been granted in other suits involving the FDCPA, such as *Irwin v. Mascott*, 370 F.3d 924 (9th Cir. 2004), but the availability of injunctive relief under the FDCPA was not challenged in *Irwin*. Based upon the language of the FDCPA and rulings outside this circuit, the court concludes that plaintiffs cannot request injunctive or declaratory relief under the FDCPA.

Furthermore, all claims under California's unfair competition law—the plaintiffs' primary basis for requesting injunctive relief—have been dismissed.[2] Plaintiffs' "umbrella" classes were to be composed of persons who had received certain mailings from a defendant within four years of the filing of the complaint; plaintiffs have no remaining causes of action with a four-year statute of limitations. In light of this, the court will treat plaintiffs' proposed subclass or subclasses in plaintiffs' motions as the proposed classes.

### C. Whether a class action is appropriate under Rule 23(a)

Federal Rule of Civil Procedure ("Rule") 23(a) lists four conjunctive criteria that must be met to certify a class action: numerosity, commonality of issues, typicality of the representative plaintiffs' claims, and adequacy of representation. A class may only be certified if the court is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982). "The burden of demonstrating that the elements of [Rule 23](a) are satisfied is on the party seeking to have a class certified." *Doninger v. Pac. N.W. Bell, Inc.*, 564 F.2d 1304, 1308 (9th Cir. 1977); *see also Gillibeau v. Richmond*, 417 F.2d

---

[2] The court declines at this time to address the parties' passing arguments regarding whether injunctive or declaratory relief is available under the Rosenthal Act, as that determination is not relevant to class certification.

1  426, 432 (9th Cir. 1969) ("[T]here must not only be allegations relative to the matters mentioned in
2  Rule 23 . . . but, in addition, there must be a statement of basic facts. Mere repetition of the
3  language of the Rule is inadequate.").

### 1. Numerosity

Under the first Rule 23(a) factor, the proposed class must be "so numerous that joinder of all members is impracticable." Rule 23(a)(1); *see also Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). Far West admits that letters similar to the one sent to Palmer were sent to at least 1,000 people within California, and Far West does not contest that the numerosity requirement is met. Stassinos admitted demanding interest from 35,000 people in one year. Joinder of 1,000 or more co-plaintiffs is clearly impractical. The numerosity requirement has been satisfied for both cases.

### 2. Commonality of issues

"A class has sufficient commonality 'if there are questions of fact and law which are common to the class.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998) (quoting Rule 23(a)(2)). In *Keele v. Wexler*, the Seventh Circuit stated that "[c]ommon nuclei of fact are typically manifest where . . . the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters." 149 F.3d 589, 594 (1998). In these cases, the plaintiffs allege that the standard letters sent by defendants to each member of the proposed class were each illegal in the same way. Far West does not contest the contents of the letters.

Stassinos argues that the proposed class in his case would not have sufficient commonality. He asserts that in defending against the claims for sending collection letters that falsely purported to be from an attorney, he would be able to disprove the allegations in certain instances. Stassinos offers no reason why there is not sufficient commonality for plaintiffs' other causes of action: the demanding excessive collection fees and interest (in violation of 15 U.S.C. § 1692e(2)(A), f(1)), sending collection letters that falsely purported to be from an attorney (in violation of 15 U.S.C. § 1692e(3)), sending collection letters without required disclosure (in violation of 15 U.S.C. § 1692g), and using a name other than the true business name on a collection letter. This court concludes that common questions exist as to whether Stassinos's conduct was unlawful.

The commonality requirement has been satisfied for both defendants.

### 3. Typicality of representative plaintiffs' claims

The typicality requirement serves to "assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id*. The Ninth Circuit has noted that "the commonality and typicality requirements of Rule 23(a) tend to merge." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). The hurdle imposed by the typicality requirement is not great. *See Hanlon* 150 F.3d at 1020 (finding typicality in proposed class with many named representatives because "the broad composition of the representative parties vitiates any challenge founded on atypicality").

The plaintiffs' motions, however, give scant consideration to the typicality requirement.[3] Each motion contains the conclusory statement that "defendant(s) sent plaintiff(s) the same form letters that contain the same allegedly unlawful demands and representation that are contained in the form letters that defendants sent to the class as a whole." This indicates that Palmer (and Hammer) have issues in common with the class members, but does not show that Palmer (and Hammer) are typical members of the class.

Rule 23(a)(3) must mean something other than a court is to consider the issue of commonality twice, as plaintiffs appear to suggest. Plaintiffs have done nothing to address how the

---

[3] The plaintiffs' motions also contain significant citation errors. There are multiple references to *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001), including a long block quotation in both motions' sections on typicality. *See* Mem. in Supp. of Pl.'s Mot. for Class Certification ("Pl.'s Far West Mot.") at 9; Mem. in Supp. of Pl.s' Mot. for Class Certification ("Pl.'s Stassinos Mot.") at 13. Neither the block quotation nor anything resembling it appears in *Armstrong*. It instead appears to be from a Seventh Circuit case: *De La Fuente v. Stokely-Van Camp, Inc*., 713 F.2d 225, 232 (1983).

Elsewhere, the plaintiffs claim the sentence "A sufficient nexus is established if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory" is from *Armstrong*, Pl.'s Far West Mot. at 7; Pl.s' Stassinos Mot. at 11, but neither it nor anything resembling it appear in that case. The sentence and slight variations on it appear to be from cases originating primarily in Florida. *See*, *e.g.*, *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *Cheney v. Cyberguard Corp*., 213 F.R.D. 484, 491 (S.D. Fla. 2003).

The court finds these errors of significance. Whether accidentally or intentionally, the plaintiffs have twice (or four times, depending on whether one considers the two briefs to be independent of each other) presented out-of-circuit authority as controlling.

1  named plaintiffs compare to the other members of the proposed classes, and there is no indication
2  whether the named plaintiffs are average members of the class for purposes of this litigation.
3  Several questions spring to mind: How does the number of bad checks the named plaintiffs wrote
4  compare to the number written by the members of the proposed class?  How do the amounts of the
5  checks compare?  How many notices did the members of the proposed class receive from the
6  defendants, and how many did the named plaintiffs receive?

7  The court would not be surprised to learn that Palmer and Hammer are not atypical members
8  of the proposed classes.[4]  To certify the class without some indication that this is true, however,
9  would be to violate the command of *Falcon* to conduct a "rigorous analysis" and ensure "that the
10 prerequisites of Rule 23(a) have been satisfied."  *See* 457 U.S. at 161.  The burden of proving class
11 certification is appropriate rests upon the plaintiffs.  *Doninger*, 564 F.2d at 1308.  "Mere repetition
12 of the language of [Rule 23] is inadequate."  *Gillibeau*, 417 F.2d at 432.  Plaintiffs have not met the
13 burden of showing they satisfy the typicality requirement in either case.

14 **4. Adequacy of Representation**

15 Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the
16 interests of the class."  The Ninth Circuit has elaborated: "To determine whether the representation
17 meets [the] standard [of Rule 23(a)(4)], we ask two questions:  (1) Do the representative plaintiffs
18 and their counsel have any conflicts of interest with other class members, and (2) will the
19 representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"
20 *Staton*, 327 F.3d at 957; *see also* Rule 23(g)(1)(B) ("An attorney appointed to serve as class counsel
21 must fairly and adequately represent the interests of the class.").

22 Plaintiffs in both actions are represented by Paul Arons, Ronald Wilcox, and O. Randolph
23 Bragg.  Each of these attorneys has submitted a declaration outlining his education and pertinent
24 experience.  Each has experience prosecuting class actions under the FDCPA.  The defendants do
25 not challenge the qualifications of plaintiffs' counsel.

---

28  [4]  In his opposition to the plaintiffs' motion for class certification, Stassinos argues that plaintiffs' showing of typicality is inadequate but does not argue that plaintiffs are atypical members of the proposed class.

ORDER GRANTING IN PART PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION—C-04-03026 RMW, C-04-03027 RMW JAH
7

1	Far West does challenge the adequacy of Palmer as the class representative in the case
2	against it. Far West's argument can be divided into two parts: (1) that Palmer is unaware of the
3	status of her lawsuit, which is primarily being prosecuted for the benefit of her attorneys, and (2)
4	that Palmer, as named plaintiff, can potentially recover a sum of money orders of magnitude larger
5	than the potential recoveries of the unnamed class members.

6	Far West points out that Palmer's declaration in support of class certification contains
7	language similar to that in the complaint. Palmer also appears to have been unaware that certain
8	claims had been dismissed at the time of her declaration. Far West also points to Fifth Circuit
9	authority stating that "[c]lass representatives must satisfy the court that they, and not counsel, are
10	directing the litigation. To do this, class representatives must show themselves sufficiently informed
11	about the litigation to manage the litigation effort." *Unger v. Amedisys Inc.*, 401 F.3d 316, 321
12	(2005). Palmer argues that the controlling standard in the Ninth Circuit is instead found in *Staton*:
13	"To determine whether the representation meets [the] standard [of Rule 23(a)(4)], we ask two
14	questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with
15	other class members, and (2) will the representative plaintiffs and their counsel prosecute the action
16	vigorously on behalf of the class?" 327 F.3d at 957.

17	That Palmer's lawsuit may be primarily for the benefit of Arons, Wilcox, and Bragg is not
18	something the Ninth Circuit has expressly stated is appropriate to consider when certifying a class.
19	Indeed, if the lawsuit is primarily for the benefit of the attorneys, they are likely to "prosecute the
20	action vigorously." While the court would not condone champerty,[5] Palmer's legal team has no
21	conflicts with class members the court is aware of and, given its extensive involvement in other
22	FDCPA class actions, seems likely to prosecute these cases vigorously; the attorneys satisfy the
23	requirements of *Stanton*.

24	Far West's second objection to Palmer as class representative is that she is entitled to up to
25	$1,000 in statutory damages, while the unnamed class members would recover no more than $0.21

---

28	  [5]  The common-law offenses of champerty and barratry are largely obsolete given today's extensive regulation of attorneys.

ORDER GRANTING IN PART PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION—C-04-03026 RMW, C-04-03027 RMW
JAH	8

1 in statutory damages each.[6] Far West claims this creates a conflict of interest between Palmer and
2 the unnamed plaintiffs because the unnamed plaintiffs could recover statutory damages of up to
3 $1,000 absent Palmer's class action. The court, however, recognizes that the amounts that would be
4 involved in individual cases by plaintiffs seeking to prosecute their own FDCPA claims would make
5 prosecution of such individual cases economically impractical. The potential difference in recovery
6 does not in itself create a conflict between Palmer and the unnamed class members.

7 Hammer, who is only a plaintiff in the suit against Stassinos, filed a declaration to support
8 class certification that is nearly identical to Palmer's. Stassinos does not challenge Hammer's
9 adequacy under Rule 23(a)(4). The court finds Hammer adequate.

10 The court is satisfied Palmer, Hammer, and their attorneys are adequate under Rule 23(a)(4).

11 **5. Conclusion**

12 Palmer has shown she meets the class certification requirements of Rule 23(a) except for
13 typicality in her action against Far West. Likewise, Palmer and Hammer have shown they satisfy
14 Rule 23(a)'s requirements except for typicality. As the court will request further briefing from the
15 parties, the court requests that plaintiffs make a more detailed showing that they meet the typicality
16 requirement of Rule 23(a)(3).

17 **D. Whether classes should be certified under Rule 23(b)(2) or (3)**

18 To be certified, a class must satisfy the criteria of one of the three subsections of Rule 23(b).
19 Plaintiffs have moved for certification of both cases under Rule 23(b)(2), and in the alternative
20 under Rule 23(b)(2) and (3).

21 A class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or
22 refused to act on grounds generally applicable to the class, thereby making appropriate final
23 injunctive relief or corresponding declaratory relief with respect to the class as a whole." Rule
24 23(b)(2). The Advisory Committee notes to the original (1966) version of the rule state that the

---

[6] As named plaintiff in the action against Far West, Palmer would be entitled to up to $1,000 in statutory damages. 15 U.S.C. § 1692k(a)(2)(B)(i). The unnamed class members would be entitled to share statutory damages of up to 1 percent of Far West's net worth. 15 U.S.C. § 1692k(a)(2)(B)(ii). Far West contends its net worth is around $93,000. Far West's Opp'n at 10. The parties have estimated the size of the proposed class as 4,233. Nine hundred and thirty dollars shared equally among 4,233 people gives each person slightly under twenty-two cents. Each class member would also be entitled to any actual damages. 15 U.S.C. § 1692k(a)(1).

"subdivision does not extend to cases in which appropriate final relief relates exclusively or predominantly to money damages." The Supreme Court has noted that there "is at least a substantial possibility" that class actions seeking monetary damages can only be certified under Rule 23(b)(3). *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121 (1994). The Court was concerned that it may be unconstitutional to certify a class action seeking monetary damages under either of the first two "mandatory" provisions of Rule 23(b); only the opt-out available to class members under Rule 23(b)(3) necessarily provides sufficient due-process protections to class members when money is at stake. *Id.* at 844, 864.

While the Ninth Circuit has declined to adopt a rule that class actions seeking monetary damages are *per se* certifiable only under Rule 23(b)(3) if at all, it has required a careful consideration of the facts of each case to ensure that a class certified under Rule 23(b)(2) is primarily seeking injunctive relief. *Molski v. Gleich*, 318 F.3d 937, 949-50 (2003). The court in *Molski* described this process as "similar" to the approach of the Second Circuit:

> Although the assessment of whether injunctive or declaratory relief predominates will require an ad hoc balancing that will vary from case to case, before allowing (b)(2) certification a district court should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits. Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery.

*Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 165 (2001).

Since the FDCPA does not allow private plaintiffs to obtain equitable relief, Rule 23(b)(2) does not support class certification in this suit. Furthermore, plaintiffs' assertions that they are primarily seeking injunctive relief are belied by their proposed class definitions. In their case against Stassinos, plaintiffs propose a class consisting of everyone "who wrote checks in California to whom defendant mailed collection demands concerning dishonored checks[] since July 27, 2000." In her case against Far West, Palmer proposes a class of everyone "with a California address to whom defendant mailed a collection demand at any time since July 27, 2000," that contained a claim for interest or threatened litigation. Both of the proposed classes are united primarily by the past

actions of one defendant towards the members. Nothing in these proposed class definitions relates to the likelihood of future violations by a defendant.

The court does not see either class action as one primarily seeking injunctive relief; therefore, neither proposed class is appropriate for certification under either Rule 23(b)(2) alone or in conjunction with Rule 23(b)(3).

**E. Whether a class action is appropriate under Rule 23(b)(3)**

Rule 23(b)(3) requires two additional factors: predominance of common issues and superiority of the class action. The Supreme Court has stated:

> Rule 23(b)(3) includes a nonexhaustive list of factors pertinent to a court's "close look" at the predominance and superiority criteria: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." In setting out these factors, the Advisory Committee for the 1966 reform anticipated that in each case, courts would "consider the interests of individual members of the class in controlling their own litigations and carrying them on as they see fit." They elaborated: "The interests of individuals in conducting separate lawsuits may be so strong as to call for denial of a class action. On the other hand, these interests may be theoretic rather than practical; the class may have a high degree of cohesion and prosecution of the action through representatives would be quite unobjectionable, or the amounts at stake for individuals may be so small that separate suits would be impracticable."

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615-16 (1997) (citations omitted).

After the parties had filed their briefs on the plaintiffs' motions for class certification, the court issued an order dismissing the plaintiffs' claims under California's unfair competition law for lack of standing. *See* Order Clarifying Dec. 14, 2004, Order Granting in Part and Denying in Part Mot. to Dismiss; Order Granting Defs.' Mot. for Recons. (Nov. 8, 2005). It thus would be difficult to assess the predominance and superiority factors from the parties' briefs. In light of this, at the hearing on the plaintiffs' motions for class certification, the court requested that the parties propose new class definitions within ten days. The defendants did so. The plaintiffs filed no proposed class definitions with the court, though Far West objected to portions of "plaintiff's e-mail to the Court on Monday[,] November 21, 2005."[7] Def. Far West's Proposed Class Definition as Requested by the

---

[7] The court received no e-mail regarding the plaintiffs' proposed class definitions.

1  Ct. at 3. Plaintiffs did object that defendants had included argument with their proposed class
2  definitions and requested leave of the court to present argument if the court considered the
3  defendants' arguments.
4        To resolve the remaining issues in plaintiffs' motions for class certification, the court will
5  allow the plaintiffs twenty days leave to file supplemental briefing supporting class certification,
6  proposing definitions for the classes in light of the changes since the plaintiffs originally moved for
7  class certification, and addressing whether plaintiffs meet the requirements of Rule 23(a)(3) and
8  (b)(3). These supplemental motions may not exceed eight pages in length. Each defendant may file
9  an opposition not exceeding eight pages within seven days of the filing of the supplemental motion
10 in the action against him or it. The plaintiffs will have a further seven days to file a reply not
11 exceeding four pages. After all papers are submitted or the time to file has run, the matter will be
12 considered submitted on the papers absent further order of the court.

### III. ORDER

14       For the foregoing reasons, the court
15       (1) finds both plaintiffs' actions meet the requirements of Rule 23(a)(1), (2), and (4) for class
16       certification,
17       (2) finds the plaintiffs have shown neither action meets the requirement of Rule 23(a)(3),
18       (3) finds class certification under Rule 23(b)(2) would be inappropriate,
19       (4) allows plaintiffs twenty days leave to file supplemental briefing supporting class
20       certification, addressing only whether plaintiffs meet the requirements of Rule 23(a)(3) and
21       (b)(3).

25 DATED:    1/12/06                         /s/ Ronald M. Whyte
                                                   RONALD M. WHYTE
26                                                    United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff(s):**

Ronald Wilcox       ronaldwilcox@post.harvard.edu
O. Randolph Bragg   rand@horwitzlaw.com
Paul Arons          lopa@rockisland.com

**Counsel for Defendant(s):**

Andrew Steinheimer  asteinheimer@mpbf.com
Mark Ellis          mellis@mpbf.com
June D. Coleman     jcoleman@mpbf.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     1-12-2006                    /s/ JH
                                      **Chambers of Judge Whyte**