
**E-FILED on** 01/09/09

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SUSANNE M. PALMER and SHARON HAMMER,<br><br>    Plaintiffs,<br><br>    v.<br><br>PAUL R. STASSINOS,<br><br>    Defendants. | Nos. C-04-03026 RMW<br>       C-05-02280 RMW<br><br><br><br><br><br>ORDERS RE CROSS-MOTIONS FOR SUMMARY JUDGMENT, MOTION TO STRIKE AND MOTION FOR CLASS CERTIFICATION |
| RICHARD L. CARRIZOSA AND MARY PEA, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>PAUL R. STASSINOS, an individual, ALAN MEACHAM, an individual, LEGAL RECOVERY SERVICES, INC., a California corporation, and DOES 1-20,<br><br>    Defendants. | **[Re C-04-03026 Docket Nos. 164, 180, 182, 184 and 231; C-05-02280 Docket Nos. 202, 204, 206]** |

      Plaintiffs Richard L. Carrizosa ("Carrizosa") and Mary Pea ("Pea") move in action number 05-2280 RMW for partial summary judgment against Paul R. Stassinos ("Stassinos") and Legal Recovery Services, Inc. ("LRS") on all liability issues on plaintiffs' claims under the Fair Debt

Collection Practices Act ("FDCPA") and California's Unfair Competition Law ("UCL").[1] Plaintiffs Susanne Palmer and Sharon Hammer also move for partial summary judgment in action number 04-03026 RMW against Stassinos and LRS on all liability issues but seek relief only under the FDCPA. Defendant Paul Stassinos ("Stassinos") moves for partial summary judgment on plaintiffs' claim that (1) he was insufficiently involved in collections activities to satisfy FDCPA § 1692e(3); and (2) he collected interest in violation of the UCL. Plaintiffs Carrizosa and Pea also move to strike certain declarations offered in support of defendants LRS's summary judgment opposition. Finally, Carrizosa and Pea move for class certification. The court considers these five motions together.

## I. BACKGROUND

LRS is a debt collection firm that works in conjunction with Stassinos, an attorney, to collect on dishonored checks. The central issues in the present motions concern: (1) the nature of the relationship between the Stassinos and LRS, and in particular Stassinos' role in the debt-collection activities; and (2) whether plaintiffs Richard Carrizosa and Mary Pea paid any interest on their alleged bad checks.

In the late 1980s, defendant Alan Meacham ("Meacham") started LRS with his then-wife Dagne Meacham. Decl. of Candance Pagliero ISO Defs.' Opp. to Pls.' Mot. for Summ. J. Ex. H. Merchants who receive bad checks forward them to LRS, who, in return for a portion of collections, sends a series of form collection letters at determined intervals. *Id.* LRS also places calls to debtors, and, if those efforts are unsuccessful, retains an attorney to file lawsuits seeking to collect on the bad checks. *Id.*

In 1993, LRS entered into an "Attorney Retainer Agreement" with Stassinos to participate in LRS's debt-collection business. Decl. of Paul Arons ISO Pls.' Mot. for Summ. J. Ex. 1. The agreement states that Stassinos will provide legal services necessary to carry out all lawsuit-related collection activities, including "preparation and filing of collection lawsuits, obtaining judgments,

---

[1] The moving papers begin by stating that plaintiffs move "against defendants Paul R. Stassinos and Legal Recovery Services, Inc." Pls.' Mot. For Summ. J. at p.1. Other papers suggest that motion is directed at Mecham. The court treats the motion as having been made only against Stassinos and LRS.

ORDERS RE CROSS-MOTIONS FOR SUMMARY JUDGMENT, MOTION TO STRIKE AND MOTION FOR CLASS CERTIFICATION —Nos. C-04-03026 RMW   C-05-02280 RMW
JAS                                                                2

1  and enforcement thereon. . . ." *Id.* Before a lawsuit is filed, however, "LRS is responsible for all
2  costs, collection activities and all communications, both verbal and written, with the debtor(s) . . . ."
3  *Id.* Under the agreement Stassinos' Law Office authorizes LRS to "utilize the name of the Law
4  Office in LRS communications with debtors, so long as said communications are in full compliance
5  with applicable state and federal collection laws." *Id.* The agreement also permits Stassinos' Law
6  Office to monitor all communications to ensure compliance with the law. *Id.*

7      Stassinos personally reviews many of the dishonored checks LRS receives from merchants.
8  Dep. of Paul Stassinos on September 18, 2007, 30. Although there is some dispute about the
9  percentage of checks he reviews and the attention dedicated to each, Stassinos estimates that he
10 spends around five hours a week reviewing checks. Dep. of Paul Stassinos on April 1, 2005 at 68-
11 69. It appears that LRS sometimes sends the first collection letter before Stassinos reviews the
12 relevant checks. Mem. in Opp. to Def.'s Mot. for Partial Summ. J. 4. When Stassinos reviews the
13 checks that LRS receives, he looks for a variety of characteristics bearing on the checks validity,
14 reason for returns, and likelihood of recovery. Dep. of Paul Stassinos on September 18, 2007, 40-
15 44.

16     Stassinos drafted the four computer-generated letters that LRS uses in its debt-collection
17 business. *Id.* at 30. The letters at issue in the Palmer and Carrizosa cases differ somewhat, but what
18 follows is true of the letters in both cases. The first letter is headed and purportedly signed by the
19 original creditor (in Carrizosa's case P.W. Supermarkets; in Palmer's Lifetouch National School
20 Studios), but includes the return address of Stassinos' Law Office. Decl. of Paul Arons ISO Pls.'
21 Mot. for Summ. J. Ex 4. The letter informs the recipient that his or her check was returned and
22 requests payment within ten days. *Id.* The second letter appears on law office letterhead, and
23 begins, "Our client has requested that we contact you regarding a check . . . written by you and
24 returned for the reasons below." *Id.* at Ex. 5. The second notice also offers the recipient the
25 opportunity to dispute the debt, and states that if the debt is not disputed within thirty days, the law
26 office will assume it valid. *Id.* The third letter is titled "30 DAY DEMAND FOR PAYMENT
27 PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1719." *Id.* at Ex. 6. It notifies the
28 recipient that, unless the debt and service charge are paid within thirty days, the recipient will be

liable for original debt plus three times that amount. *Id.* The fourth and final letter, entitled "NOTICE OF ASSESSMENT OF TREBLE DAMAGES" states that the recipient is now liable for treble damages in addition to the original check amount. *Id.* at Ex. 7. The letter also states that "[i]f necessary, I may now pursue this through civil action in Superior Court" and that a negative credit report may be submitted to a credit reporting agency." *Id.*

## II. SUMMARY JUDGMENT

### A. Claim for Collection of Interest

Plaintiffs in both cases move for summary judgment on their claims that defendants unlawfully sought to collect pre-judgment interest on plaintiffs' dishonored checks. Defendant Stassinos argues that any interest was charged as a result of a bona-fide error as defined in 15 U.S.C. § 1692k(c).

Under the FDCPA, a debt collector may not collect any amount unless that amount is "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. 1692f(1). This court has held that state law does not expressly authorize the collection of pre-judgment interest on a debt resulting from a bad check, if the collection of interest is sought in addition to treble damages or a service fee. *Palmer v. Stassinos*, 348 F.Supp.2d 1070, 1077-83 (N.D.Cal. 2004) *clarified on reconsideration by* 419 F.Supp.2d 1151, 1152-53 (N.D. 2005); *see Hunt v. Check Recovery Systems, Inc.*, 478 F.Supp.2d 1157, 1161-1168 (N.D.Cal.2007). Defendants advance two primary arguments in response to plaintiffs' motions for summary judgment: (1) that plaintiffs never actually paid any interest, which deprives them of standing to sue under the UCL; and (2) that any interest sought was the result of a bona fide error.

#### 1. Actual Payment of Interest

Merely having attempted to collect interest on a dishonored check is sufficient to allege a violation of the FDCPA. *Palmer,* 348 F.Supp.2d 1077-83. But here there is no dispute over whether defendants sought interest, only whether they actually received payment of interest. Actual payment is necessary to state a claim and receive relief under the UCL. *Id.* at 1087 (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982)).

In this case there is a genuine dispute of material fact over whether actual interest was paid by the plaintiffs Carrizosa and Pea. Interest was not paid by plaintiffs Palmer and Hammer. Plaintiffs Carrizosa and Pea offer a table summarizing LRS computer reports in support of their claim that $2.32 in interest was paid. See Pl.'s Mot. for Partial Summ. J. at 14. Plaintiffs concede, however, that the computer reports do not specifically allocate the interest payments, apparently because the computer was reprogrammed not to after this court's prior decision in *Palmer*. *Id.* Defendants for their part offer the declarations of Michele Marshall and David Meacham, who, relying on purported business records of LRS, declare that plaintiffs did not in fact pay interest on checks. These contentions are contradictory, and thus create a genuine dispute of material fact.

Plaintiffs argue in a separate motion that Marshall's declaration should be stricken as a sham. Although the motion raises issues as to the weight of Marshall's testimony, the motion is denied. First, Marshall testified not to her personal knowledge of the alleged debt, but to her interpretation of LSR records based on her experience as an employee. And while the differences between Marshall's testimony and the Itemization of Charges letter may require explanation, they are not sufficient to expose Marshall's declaration as a sham submitted to create an issue of fact. As the Ninth Circuit has written, the rule against sham testimony "does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier . . . testimony. Rather, the [concern is] with 'sham' testimony that flatly contradicts earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment. Therefore, before applying the *Radobenko* sanction, the district court must make a factual determination that the contradiction was actually a 'sham.'" *Kennedy v. Allied Mut. Ins. Co*., 952 F.2d 262, 266-67 (citing *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 543-44 (9th Cir.1975)). Further, plaintiffs' evidence that they did, in fact, pay interest is not unequivocal and, therefore, is not sufficient for summary judgment.

In the same motion, plaintiffs argue that numerous statements in Mecham and Marshall's declarations should be stricken as lacking sufficient foundation to be admissible under the business records exception to the hearsay rule. Defendants claim in their responsive memorandum that a sufficient foundation is established, but provide no citations to where that foundation appears. The records may well qualify as business records, but defense counsel's foundational showing is

insufficient. Since the court does not find plaintiffs' showing that they actually paid interest sufficient to grant summary judgment, the court will not rule on each portion of the declarations to which plaintiff objects. Plaintiffs are free to later move *in limine* to exclude testimony or documents at trial, if necessary.

Based on the evidence presented, a triable issue of fact exists as to whether plaintiffs Carrizosa and Pea actually paid interest on their bad check debts.

### 2. Bona-fide Error

Defendant Stassinos moves for summary judgment on plaintiffs' claims under FDCPA and the UCL on the basis that he made a bona-fide error. Stassinos argues that he relied on numerous state-court judgments enforcing awards of interest in suits seeking payment on dishonored checks.[2] While the court appreciates that the state-law question of whether pre-judgment interest may be charged where the creditor also seeks treble damages or a service charge on a dishonored check has not been expressly addressed by the state court, Ninth Circuit law makes clear that a mistake of law cannot alone be the basis of a bona-fide error defense. *Baker v. G.C. Services Corp.*, 677 F.3d 775, 779 (1982).

Stassinos attempts to "distinguish" *Baker*, but his arguments go properly to *Baker*'s merits. *Baker*'s holding has indeed been questioned by other circuits. *See Johnson v. Riddle*, 305 F.3d 1107, 1121-24 (10th Cir. 2002) (collecting cases). It nonetheless remains the law in the Ninth Circuit and some other circuits. *See Picht v. Jon R. Hawks Ltd.*, 236 F.3d 446, 451 (8th Cir. 2001); *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989).

### 3. Other Arguments

The defendants raised the *Rooker-Feldman* doctrine, which holds generally that federal district courts cannot sit as courts of appeal to state courts. It does not apply here. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). As the Supreme Court wrote in *Exxon Mobil*:

---

[2] Arguing that one relied on the award of pre-judgment interest in default judgments is not particularly persuasive.

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Id.* at 283. Plaintiffs are not state court losers, nor are they seeking to take action with respect to any state court default judgment.

LRS also argues that Pea's payment to satisfy the debt on the four checks constituted either a novation, or an accord and satisfaction. Therefore, LRS contends, no interest was paid because the replacement payment, which was less than the sum of the four checks, satisfied the debt. LRS's contention is not persuasive. A payment of an amount that is smaller than the amount of an alleged debt in satisfaction of that debt does not necessarily mean that the creditor gave up its right to treat any portion of the payment as payment of accrued interest. Without a case to support their contentions, LRS' argument that no interest was paid is not persuasive.

### B.     Meaningful Involvement of Stassinos

All plaintiffs move for summary judgment arguing that Stassinos was insufficiently involved in collection activities of LRS to satisfy the FDCPA. Plaintiffs also rely on the specific FDCPA provision that makes it unlawful for a debt collector to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt" (15 U.S.C. § 1692e), including "the false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3). Courts have interpreted § 1692e(3) to require that attorneys sending collection letters review the individual debtor's file and have some knowledge of the alleged debt. *See Clomon v. Jackson,* 988 F.2d 1314, 1321 (2d Cir. 1993); *Masuda v. Thomas Richards & Co.,* 759 F. Supp. 1456, 1461 (C.D.Cal. 1991); *Irwin v. Mascott*, 112 F. Supp. 2d 937, 949 (N.D. 2000); *Uyeda v. J.A. Cambece Law Office, P.C.*, 2005 WL 1168421 *3 (N.D. Cal. 2005); *see also Kistner v. Law Office of Michael P. Margelexsky, LLC*, 518 F.3d 433, 428-442 (6th Cir. 2005).

Section 1692e of the FDCPA sets forth a general proscription of deceptive debt-collection conduct before enumerating a non-exhaustive list of forbidden practices.[3] The enumerated list is quite specific; it includes falsely representing the amount of a debt (§ 1692e(2)(A)), the false implication that the debtor has committed a crime (§ 1692e(7)), and the false implication that a communication is from an attorney (§ 1692e(3)). Plaintiffs argue that unless an authoring attorney is "meaningfully involved" in the decision to send a particular letter, then the letter is not "from" an attorney and thus violates the Act. Pls.' Mot. for Partial Summ. J. at 18. (citing *Clomon*, 988 F.2d at 1320). In order to be "meaningfully involved," plaintiffs argue, an attorney must review the debtor's file and individually decide whether the letter should be sent. *Id.* This seems like a more rigorous standard than warranted by the language of section 1692(e)(3) and puts a significant burden on an attorney involved in a debt collection practice given the practical realities of the volume nature of such a practice.

In determining whether a practice is deceptive under the FDCPA, the Ninth Circuit bases its analysis on the "least sophisticated consumer." *Baker v. G.C. Services Corp.* 677 F.2d 775, 778 (9th Cir. 1982). As the Seventh Circuit wrote in *Avila v. Rubin*, "[a]n unsophisticated consumer getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which may not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking." 84 F.3d 222, 229 (7th Cir. 1996). To ensure that the debtor's fear is warranted, *Avila* and *Clomon* require that the sending attorney exercise professional judgment in deciding to send the particular debtor a collection letter. *Id.*; *Clomon*, 988 F.2d at 1320. In *Clomon*, the Second Circuit candidly assessed the effect of such a rule: "there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restrictions imposed by § 1692e." *Id.*

---

[3] "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:" 15 U.S.C. 1692e.

ORDERS RE CROSS-MOTIONS FOR SUMMARY JUDGMENT, MOTION TO STRIKE AND MOTION FOR CLASS CERTIFICATION   —Nos. C-04-03026 RMW      C-05-02280 RMW
JAS                                                                  8

The court does not quarrel with the requirement that an attorney must have meaningful involvement if he or she signs a collection letter. However, the practice of sending an initial form letter drafted by an attorney without the attorney's review of the specific debtor's file could nevertheless be accomplished with meaningful attorney involvement if such a letter was sent under the clear directions and supervision of an attorney. A form collection letter should not necessarily cease to be "from" an attorney simply because the attorney has not separately reviewed that individual case. To conclude otherwise inappropriately distinguishes between the attorney's judgment in considering an individual case and that same judgment exercised in drafting form letters and designing the process by which a determination is made as to when and whether they should be sent. The exercise of appropriate legal judgment can yield a procedure that leads to meaningful involvement.

However, if a series of letters is sent, more direct involvement of the attorney is implied if suit is threatened or assessments allegedly made. That type of advisement suggests that an attorney has reviewed the individual case and concluded that an assessment has been appropriately made and suit is forthcoming. It legitimately raises the fear in the consumer, let alone the least sophisticated consumer, that "the price of poker has just gone up." *Avila*, 84 F. 3d at 229.

An attorney cannot merely license his or her name to a debt collector.[4] The court finds that *Avila* articulated an appropriate standard when it stated that "a letter from an attorney implies that a real lawyer, acting like a lawyer usually acts, directly controlled or supervised the process through which the letter was sent. That is the essence of the connotation that accompanies the title of 'attorney.'" *Avila*, 84 F.3d at 229.

In sum, the plain text of the FDCPA provides a general requirement that collection not be misleading followed by a set of specific restrictions on misleading conduct. Where an act is not misleading or deceptive to the unsophisticated consumer, and it is outside the enumerated proscribed

---

[4] A letter sent under a licensed attorney's name would not be from an attorney for the purposes of 1692e(3), but it would also violate 1692j(a). See *Boyd v. Wexler*, 275 F.3d 642, 644 (7th Cir. 2001).

practices, it does not violate the FDCPA.[5]  However, a letter is not "from" an attorney unless the lawyer, consistent with his professional ethical obligations, exercised direct control and supervision over the process by which the letter was sent.  This conclusion seems consistent with a formal opinion of the Los Angeles County Bar Association, admittedly issued before the enactment of the FDCPA, dealing with an attorney who is engaged in debt collection on behalf of his corporate employer.

> [A]n attorney may delegate tasks to lay persons if he supervises and is professionally responsible to the client for the work so long as the lay persons do not do things that the lawyer may not do and do not do things that only lawyers may do. . . .
> The Committee is of the opinion that the procedure outlined in the present inquiry does not constitute an unethical delegation of the attorney's professional responsibilities.  It is the attorney who has determined that if certain specific and objective criteria are met, a form collection letter previously approved by the attorney will be mailed to the customer over the signature of the attorney.  The use of a computer, programed to print letters upon recognizing such specific and objective criteria, in place of decisions and manually generated letters, under these facts, is immaterial.
>
> * * *
>
> If in fact a particular account is turned over to the attorney for collection in the usual sense and a special attorney-client relationship is thus created, then certainly it would not be improper for the attorney to use [his name on computer-written collections letters].

L.A. County Bar Association Formal Opinion No. 338 dated September 27, 1973.  This Los Angeles Bar Association opinion is not cited as authority supporting the court's opinion as expressed herein but rather to show how a thoughtful bar evaluated the ethics of an attorney involved in a somewhat similar situation.

The question here, however, is whether Stassinos's involvement was meaningful under the standard, as set forth in this order, which is a somewhat more liberal standard than that described in *Avila* and *Clomon*.  Stassinos testified that he reviews the checks for issues that concern him and flags certain checks to track as they proceed through the collection process.  Stassinos Depo. September 18, 2007 at 30.  He checks to ensure that his instructions are being followed.  *Id*.  He also checks to see whether checks are torn, if they were returned due to a closed account, or if the coding

---

[5]  The letters in *Clomon*, *Masuda*, and *Boyd* would run afoul of § 1692e independent of 1692e(3). See *Clomon*, 988 F.2d 1321; *Masuda,* 759 F.Supp. at 1460; *Boyd*, 275 F.3d 645.

ORDERS RE CROSS-MOTIONS FOR SUMMARY JUDGMENT, MOTION TO STRIKE AND MOTION FOR CLASS CERTIFICATION   —Nos. C-04-03026 RMW       C-05-02280 RMW
JAS                                                            10

1  information is damaged. *Id.* at 38:12-17.  He checks whether the signatures match the names of the
2  account holders. *Id.* at 39:7-11.  Stassinos further testified that as he gains experience in collections,
3  the names of particular debtors may become familiar as frequently writing bad checks or as having
4  been the targets of forgeries. *Id.* at 39-41.  Stassinos also claims he surveys the checks for a variety
5  of other qualities that might aid in collecting the debt. *Id.* at 40-44.  Based on these impressions, he
6  can track a check or return it to the merchant. *Id.*

7       However, Stassinos does appear to spend a small amount of time reviewing individual
8  checks and it is not clear that he necessarily reviews each individual file before the last collection
9  letters are sent.  The individual debtors' files generally do not reflect whether Stassinos has reviewed
10 them. If a debtor calls Stassinos, he or she is apparently told that Stassinos is not available.

11      Plaintiffs focus on the fact that Stassinos does not appear to review checks before the first
12 collection letters go out.  Mem. in Opposition to Def. Stassinos Mot. for Partial Summ. J. 4.
13 Although this may not be necessary to comply with the FDCPA, the court finds that there is enough
14 question about Stassinos's involvement to raise a question of fact as to whether it is "meaningful," in
15 other words whether LRS and Stassinos are engaged in a misleading practice under the FDCPA and,
16 in particular, § 1692e.

17      **C.   Unauthorized Practice of Law**

18      Plaintiffs move for summary judgment on the claim that the relationship between LRS and
19 Stassinos constitutes the unauthorized practice of law.  Before reaching the merits, the threshold
20 issue of whether this claim was sufficiently raised in the complaint must be addressed.

21      The complaint alleges that defendants, by threatening to bring lawsuits before having
22 determined that a lawsuit would be filed, and without legal authority to bring lawsuits, violated §
23 1692e(5) of the FDCPA. § 1692(e)(5) proscribes "[t]he threat to take any action that cannot legally
24 be taken or that is not intended to be taken."  In their motion for summary judgment, however, the
25 plaintiffs proceed under a different theory of liability although still purportedly under § 1692(e)(5).
26 Plaintiffs rely on case law establishing that any illegal action, including the unauthorized practice of
27 law, violates § 1692e(5).  Pls.'s Mot. for Partial Summ. J. 21 (citing *Marchant v. United States*
28 *Collections West*, 12 F.Supp. 2d 1001, 1006 (D.Ariz. 1998).  In particular, the motion argues that

ORDERS RE CROSS-MOTIONS FOR SUMMARY JUDGMENT, MOTION TO STRIKE AND MOTION FOR CLASS CERTIFICATION   —Nos. C-04-03026 RMW   C-05-02280 RMW
JAS                                                      11

**United States District Court**
**For the Northern District of California**

1 defendants (1) sent letters suggesting falsely that they were from an attorney, (2) participated in an
2 illegal fee-sharing arrangement; (3) interacted with debtors and Stassinos in a way that constituted
3 the unauthorized practice of law; and (4) participated in a business relationship that constituted an
4 illegal "capping scheme."  The complaint alleges that the false threat to file lawsuits forms the
5 factual basis for the violation of § 1692e(5).  Summary judgment cannot be fairly sought on a claim
6 that has not been pled.  *See Coleman v. Quaker Oats*, 232 F.3d 1271 (9th Cir. 2000).  Although the
7 Federal Rules of Civil Procedure provide for a simplified notice procedure for pleading a claim, the
8 notice must be "a short and plain statement of the claim showing that the pleader is entitled to
9 relief." Fed. R. Civ. P. 8(a)(2).  The complaint gives no notice to defendants that plaintiffs claim
10 that defendants participated in an illegal fee sharing arrangement, engaged in the unauthorized
11 practice of law and participated in a illegal "capping scheme."  Such claims are outside the
12 pleadings.  However, issues with respect to whether LRS and Stassinos engaged in misleading debt
13 collection practices, as discussed above, are fairly raised by the complaint.

### D. Letters Sent From PW Supermarkets and Lifetouch National School Studios

The FDCPA restricts collection communication from using "any business, company, or organization name other than the true name of the debt collector's business, company, or organization."  15 U.S.C. 1692e(14). Defendants first letter appears on P.W. Supermarkets (in *Palmer* Lifetouch National School Studios) letterhead, and is signed "P.W. Supermarkets."  P.W. Supermarkets is not the true name of the debt collector nor did it actually compose or send the letter. Because both Stassinos and LRS qualify as debt collectors under § 1692e, the letter constitutes a violation of § 1692e(14).

### E. Letters Lack Validation Notice

The FDCPA also requires that, within five days of an initial communication with a consumer, a debt collector must send the consumer a written notice including certain information about the debt and advising the consumer of his or her right to request the true name and address of the original creditor. 15 U.S.C. 1692g(a)(1)-(5).  Plaintiffs in both the *Carrizosa* and *Palmer* cases claim that this provision was violated but fail to set forth specifically when the first contact was made by LRS and what was not provided within 5 days thereafter.

### F.   Letters to Carrizosa and Pea

The FDCPA forbids "the collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. 1692f(1). The checks themselves do not permit additional fees to be charged on the debt. But Cal. Civil. Code §§ 1719(a)(1) and (2) do permit the charge of treble damages and service fees on "any person who passes a check on insufficient funds." The statute defines "pass a check on insufficient funds" as "to make, utter, draw, or deliver any check, draft, or order for the payment of money upon any bank, depository, person, firm, or corporation that refuses to honor the check, draft, or order. . . ." Cal. Civ. 1719(a)(6). Under this definition, Pea was not a "person who pass[ed] a check on insufficient funds." Treble damages and services fees could not be charged against her. Although California law makes a spouse liable for community household debts (Cal. Family Code § 721(a); *Garthofner v. Edmonds*, 74 Cal.App.2d 15, 18 (1946)), a spouse does not face liability for the additional charges that can be collected from the person who passes the check on insufficient funds. Therefore, even if Pea were treated as Carrizosa's wife, addressing the letters to Pea as well as Carrizosa seeking treble damages or services fees constituted a violation of § 1692(f).

## III. CLASS CERTIFICATION

Plaintiffs Carrizosa and Pea move for class certification based on alleged violations of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692o.

### A.   Background

Plaintiffs seek certification of the following class:

> *Umbrella class*: All persons: (i) who wrote checks in California (iii)[sic] to whom any defendant mailed letters that were materially the same as those mailed to Richard Carrizosa or Mary Pea in an attempt to collect a dishonored check, (iii) whose mail was not returned as undeliverable.
>
> *Sub-class 1*: [FDCPA class]: All members of the umbrella class, from whom defendant attempted to collect, or collected money for checks written for personal, family, or household purposes since June 5, 2004.
>
> *Sub-class 2*: [UCL class]: All members of the umbrella class, from whom defendant attempted to collect, or collected, money, since June 5, 2001.

### B.   Analysis

ORDERS RE CROSS-MOTIONS FOR SUMMARY JUDGMENT, MOTION TO STRIKE AND MOTION FOR CLASS CERTIFICATION —Nos. C-04-03026 RMW    C-05-02280 RMW
JAS                                                                    13

**United States District Court**
For the Northern District of California

The FDCPA assumes that class actions may be appropriate. *See* 15 U.S.C. § 1692k(a)(2)(B). Class certification is a matter within the discretion of the district court *(Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001)), although the determination must be supported by sufficient factual findings (*Local Joint Executive Bd. Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1161 (9th Cir. 2001)), and a proper understanding of the applicable law. *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1237 (9th Cir. 2001).

Federal Rule of Civil Procedure 23(a) lists four criteria that must be met to certify a class action: numerosity, commonality of issues, typicality of the representative plaintiffs' claims, and adequacy of representation. A class may only be certified if the court is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982). The plaintiff bears the burden of demonstrating the requirements of Rule 23(a) are satisfied. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (1992); *see also Gillibeau v. Richmond*, 417 F.2d 426, 432 (9th Cir. 1969) ("[T]here must not only be allegations relative to the matters mentioned in Rule 23 . . . but, in addition, there must be a statement of basic facts. Mere repetition of the language of the Rule is inadequate.").

The court has an initial concern that must be addressed before considering Rule 23(a)'s requirements in detail. The proposed class definition is vague. The language "letters that were materially the same as those mailed to Richard Carrizosa or Mary Pea" does not sufficiently identify the language that allegedly violated the FDCPA which must have been contained in the letter or letters received by an alleged debtor in order for that alleged debtor to be a member of the class. A class merely defined as those receiving letters "materially the same" invites squabbles as to whether one qualifies for class membership. It appears that this deficiency in the class definition can easily be cured since the letters were apparently all drafted by Stassinos for the purpose of collecting from debtors by, among other things, warning of the escalating consequences of not paying the alleged debt.

**1.     Numerosity**

Rule 23(a) requires that a proposed class be "so numerous that joinder of all members is impracticable." Plaintiffs argue that the numerosity requirement is satisfied by the volume of letters sent by defendants, specifically, according to deposition testimony, up to 5,000 letters per week to check writers and 35,000 in one year seeking interest. As defendants point out, these numbers do not necessarily reflect the number of persons who received letters materially the same as those Carrizosa received. The court will determine whether this requirement has been met once the class definition has been refined. However, the court can make reasonable assumptions in assessing whether a proposed class is numerous. *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604 (N.D.Cal.2004). Defendant Stassinos cites *Dalton v. FMA Enterprises, Inc.*, 1996 WL 379105 (M.D.Fla. 1996) for the proposition that speculation cannot establish numerosity. *Dalton* held that numerosity could not be established by the *sole fact* that form letters were used. We may have substantially more than just the use of form letters to satisfy the numerosity requirement.

### 2.  Commonality of Issues

"A class has sufficient commonality 'if there are questions of fact and law which are common to the class.' " *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998) (quoting Rule 23(a)(2)). In *Keele v. Wexler*, the Seventh Circuit stated that "[c]ommon nuclei of fact are typically manifest where . . . the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters." 149 F.3d 589, 594 (1998).

Defendants argue that variances in the content and scheduling of some letters, along with the differing consideration Stassinos might have given to some debtors versus others, show that plaintiffs have not established the commonality requirement. But Stassinos concedes that common questions exist for the FDCPA's more formulaic requirements, like accurately identifying the sender, including certain information, and not seeking interest on dishonored checks. As a result of these common questions, it appears that with a revised definition of the proposed class, the commonality requirement will be met.

### 3.  Typicality of the Representative Plaintiffs Claims

The typicality requirement serves to "assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th

Cir.1992). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* The Ninth Circuit has noted that "the commonality and typicality requirements of Rule 23(a) tend to merge." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir.2003). The hurdle imposed by the typicality requirement is not great. *See Hanlon,* 150 F.3d at 1020 (finding typicality in proposed class with many named representatives because "the broad composition of the representative parties vitiates any challenge founded on atypicality").

Whether Plaintiffs claims are typical of the class depends on the content of letters sent to other members of the class. Typicality requires more than merely common questions of law, it requires alignment of interests. It appears, however, if plaintiffs satisfy the numerosity requirement, typicality will also be met.

### 4.   Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The Ninth Circuit has elaborated: "To determine whether the representation meets [the] standard [of Rule 23(a)(4) ], we ask two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Staton, 327 F.3d at 957; see also Rule 23(g)(1)(B) ("An attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class.").

Plaintiffs and their attorneys are here qualified to adequately represent the class in this action.

### 5.   Certification Under Rule 23(b)(2) or 23(b)(3)

Certification under Rule 23(b)(2) appears appropriate if plaintiffs Carrizosa and Pea can appropriately refine the class definition. Certification is appropriate if declaratory or injunctive relief is predominant and monetary damages are incidental. *Probe v. State Teachers' Retirement System*, 780 F.2d 776, 780 (9th Cir. 1986). Here, the primary relief sought is a declaration that defendants' collection practices violate the FDCPA and the UCL and an injunction enjoining certain practices. The damages sought "flow directly from liability to the class as a *whole* on the claims

forming the basis of the injunctive or declaratory relief" and, therefore, are incidental. *Molski v. Gleich*, 318 F.3d 937, 949 (9th Cir. 1986) (internal quotation marks omitted). However, a decision must wait to see if plaintiffs can propose a workable class definition.

## IV.  ORDER

1. The Motion of Plaintiffs Carrizosa and Pea for Summary Judgment on All Liability Issues is denied but the following facts are not genuinely at issue and must be treated as established in the action: (a) the letters sent to Carrizosa or Carrizosa and Pea purportedly authored by PW Supermarkets, Inc. during the proposed class period were actually sent by LRS, a debt collector, and thus violated 15 U.S.C. § 1692e(14) proscribing the use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization; (b) prejudgment interest is not recoverable if treble damages or service charges are assessed by the debt collector; (c) the letters sent to Carrizosa and Pea and seeking to collect service charges or treble damages violated 15 U.S.C. § 1692f(1) which prohibits the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law;

2. Defendant Stassinos' Motion For Partial Summary Judgment is denied;.

3. The Motion of Plaintiffs Carrizosa and Pea to Strike is denied without prejudice to raising the admissibility issues in a motion *in limine* before trial;

4. The Motion of Plaintiffs Palmer and Hammer for Summary Judgment on All Liability Issues is denied but the following facts are not genuinely at issue and must be treated as established in the action: (a) the letter sent to Palmer purportedly authored by Lifetouch National School Studios during the proposed class period was actually sent by LRS, a debt collector, and thus violated 15 U.S.C. § 1692e(14) proscribing the use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization; (b) prejudgment interest is not recoverable if treble damages or service charges are assessed by the debt collector; (c) the letters sent to Palmer and Hammer seeking to collect service charges or treble damages violated 15 U.S.C. § 1692f(1) which prohibits the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law;

5. The Motion of Plaintiffs Carrizosa and Pea for Class Certification is denied without prejudice to its renewal.

DATED: 01/09/09

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Ronald Wilcox        ronaldwilcox@post.harvard.edu
O. Randolph Bragg    rand@horwitzlaw.com
Paul Arons           lopa@rockisland.com

**Counsel for Defendants:**

Andrew M. Steinheimer    asteinheimer@ecplslaw.com
June D. Coleman          jcoleman@ecplslaw.com
Mark Ewell Ellis         mellis@ecplslaw.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**      01/09/09                               JAS
                                              **Chambers of Judge Whyte**